IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ELISHA NICOSIA, | : |
| | : Case No. _____ |
| Plaintiff, | : |
| | : JURY TRIAL DEMANDED |
| v. | : |
| | : **COMPLAINT FOR VIOLATION OF THE** |
| NTN BUZZTIME, INC., ALLEN WOLFF, | : **SECURITIES EXCHANGE ACT OF 1934** |
| MICHAEL GOTTLIEB, RICHARD | : |
| SIMTOB, SUSAN MILLER, BIT MERGER | : |
| SUB, INC., and BROOKLYN | : |
| IMMUNOTHERAPEUTICS LLC, | : |
| | : |
| Defendants. | : |

Plaintiff, by her undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF ACTION

1. On August 12, 2020, NTN Buzztime, Inc. ("NTN" or the "Company") entered into an agreement and plan of merger (the "Merger Agreement") with BIT Merger Sub, Inc. ("Merger Sub") and Brooklyn Immunotherapeutics LLC ("Brooklyn").

2. Under the terms of the Merger Agreement, Merger Sub will merge with and into Brooklyn, with Brooklyn continuing as a wholly-owned subsidiary of NTN, and the membership interests of Brooklyn will be converted into the right to receive shares of NTN common stock (the "Proposed Merger").

3. On January 20, 2021, defendants filed a Form S-4 (the "S-4") with the United States Securities and Exchange Commission ("SEC").

4. As alleged herein, the S-4 omits material information regarding the Proposed Merger, and defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934

(the "Exchange Act").

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is and has been continuously throughout all relevant times the owner of NTN common stock.

9. Defendant NTN is a Delaware corporation and maintains its principal executive offices at 6965 El Camino Real, Suite 105-Box 517, Carlsbad, CA 92009. NTN's common stock is traded on the NYSE American under the ticker symbol "NTN."

10. Defendant Allen Wolff is Chief Executive Officer and Chairman of the Board of Directors (the "Board") of NTN.

11. Defendant Michael Gottlieb is a member of the Board.

12. Defendant Richard Simtob is a member of the Board.

13. Defendant Susan Miller is a member of the Board.

14. Defendants identified in ¶¶ 10-13 are referred to as the "Individual Defendants."

15. Defendant Merger Sub is a Delaware corporation and a wholly-owned subsidiary of NTN.

16. Defendant Brooklyn is a Delaware limited liability company.

**SUBSTANTIVE ALLEGATIONS**

17. The Company delivers interactive entertainment and innovative technology that helps its customers acquire, engage, and retain its patrons. NTN's tablets, mobile app, and technology offer engaging solutions to establishments that have guests who experience dwell time, such as in bars, restaurants, casinos, and senior living centers.

18. On August 12, 2020, NTN entered into the Merger Agreement under which Merger Sub will merge with and into Brooklyn, with Brooklyn continuing as a wholly-owned subsidiary of NTN, and the membership interests of Brooklyn will be converted into the right to receive shares of NTN common stock.

19. The press release announcing the Proposed Merger provides as follows:

> NTN Buzztime, Inc. (NYSE American: NTN) and Brooklyn ImmunoTherapeutics LLC ("Brooklyn"), a privately-held biopharmaceutical company focused on exploring the role that cytokine-based therapy can have in treating patients with cancer, today announced that the companies have entered into a definitive merger agreement. If approved by the stockholders of NTN Buzztime and the beneficial holders of the Class A membership interests of Brooklyn, Brooklyn will merge with a wholly-owned subsidiary of NTN Buzztime in an all-stock transaction. Following closing, which the parties expect will occur in the fourth quarter of 2020, the combined company will continue under the Brooklyn ImmunoTherapeutics name and will focus on the advancement of Brooklyn's program to further develop its cytokine-based drug for the treatment of various cancers.
>
> Brooklyn's chief executive officer Ron Guido, MS, MS Pharm. Med., stated, "We are pleased to reach an agreement with NTN Buzztime for the proposed merger. This provides us with the opportunity, once the merger is completed, to have our shares traded in the public market and to expand our investor base, which we believe will increase our ability to advance our clinical development program exploring the treatment of certain cancers using derived cytokines. We expect this merger will also enable us to expand our resources and expertise to build momentum in our drug development program. We believe that the merger will

provide benefit to both the members of Brooklyn and the stockholders of NTN Buzztime."

Mr. Guido continued: "Brooklyn is focused on exploring the role that IRX-2, a cytokine-based investigational therapy, can have on the immune system in treating patients with cancer. IRX-2's active constituents, namely Interleukin-2 (IL-2) and other key cytokines, are postulated to signal, enhance and restore immune function suppressed by the tumor, thus enabling the immune system to attack cancer cells. Unlike existing recombinant IL-2 therapies, IRX-2 is naturally derived from human blood cells. This may potentially promote better tolerance, broader targeting, and natural molecular conformation leading to greater activity, and permit low physiologic dosing rather than high doses needed in existing IL-2 therapies. Our ongoing development program is specifically investigating use of IRX-2 in neoadjuvant (pre-surgical) and adjuvant (post-operative) treatment for advanced head and neck squamous cell cancer. IRX-2 has received both fast track designation and orphan drug designation from the FDA for this indication. Potential use of our product candidate in other cancer indications is also being evaluated in several investigator-sponsored trials. Finally, we are currently modifying our manufacturing process to allow us to develop additional drugs with a variety of cytokine mixtures to expand our product offerings."

Allen Wolff, chief executive officer of NTN Buzztime, stated, "This transaction reflects the continuing commitment of our management team and board of directors to deliver value to our stockholders. Following a thorough review of strategic alternatives, we determined that the proposed merger with Brooklyn is in the best interest of our stockholders. We are also continuing to explore the sale of substantially all of the assets of our current business to provide additional capital and to allow the combined company to focus exclusively on Brooklyn's business following the merger. While we are in discussions with multiple parties who are interested in purchasing those assets, no definitive agreement has been entered into to date."

About the Proposed Merger

Under the merger agreement, immediately following the closing of the merger, the members of Brooklyn collectively will own 94.08% of the outstanding common stock of the combined company and NTN Buzztime stockholders immediately prior to the closing of the merger collectively will own 5.92% of the outstanding common stock of the combined company, which percentages are subject to adjustment based on Brooklyn's cash and cash equivalents and NTN Buzztime's net cash balance at the closing, all as more particularly set forth in the merger agreement.

The merger agreement contains customary representations, warranties and covenants made by NTN Buzztime and Brooklyn, including covenants relating to both parties using their best efforts to cause the transactions contemplated by the merger agreement to be satisfied, covenants regarding obtaining the requisite

approvals of NTN Buzztime stockholders and the beneficial holders of the Class A membership interests of Brooklyn, covenants regarding indemnification of directors and officers, and covenants regarding NTN Buzztime's and Brooklyn's conduct of their respective businesses between the date of signing of the merger agreement and the closing. The merger agreement also contains certain termination rights for both NTN Buzztime and Brooklyn, and, in connection with the termination of the merger agreement under specified circumstances, NTN Buzztime and Brooklyn may be required to pay the other party a termination fee.

As a condition to the closing of the merger, Brooklyn has agreed that it will not have less than $10 million in cash and cash equivalents and not more than $750,000 of indebtedness for borrowed money at the closing. Certain beneficial holders of Brooklyn's Class A membership interests have entered into contractual commitments to invest $10 million into Brooklyn immediately prior to the closing of the merger. Further, as a condition to the closing of the merger, NTN has committed that the deficit in its net cash at the closing, as calculated under the merger agreement, will not exceed $3 million.

The combined company, led by Brooklyn's current management team, is expected to be named "Brooklyn ImmunoTherapeutics, Inc." and be headquartered in Brooklyn, NY.  After the closing, the combined company is expected to trade on the NYSE American market under a new ticker symbol.

The merger agreement has been unanimously approved by the board of directors of NTN Buzztime, upon the recommendation of its strategic committee, and by the managers of Brooklyn. The NTN Buzztime board of directors have also recommended to NTN Buzztime's stockholders that they vote to approve issuance of the shares to the members of Brooklyn pursuant to the merger agreement, and the managers of Brooklyn have recommended to the beneficial holders of the Class A membership interests of Brooklyn that they approve the merger agreement and the merger. The transaction is expected to close in the fourth quarter of 2020, subject to approvals by the requisite stockholders of NTN Buzztime and beneficial holders of the Class A membership interests of Brooklyn described above, the continued listing of the combined company on the NYSE American, each of the company's meeting its capitalization or net cash condition, as applicable, and other customary closing conditions.

In connection with the transaction, Maxim Group LLC is serving as the financial advisor for Brooklyn and Newbridge Securities Corporation is serving as the financial advisor to NTN Buzztime. Further, Breakwater Law Group, LLP and Sheppard, Mullin, Richter & Hampton LLP are serving as legal counsel to NTN Buzztime and Akerman LLP is serving as legal counsel to Brooklyn in connection with the transaction.

20. On January 20, 2021, defendants filed the S-4, which, as alleged below, omits material information regarding the Proposed Merger.

### Financial Projections

21. The S-4 fails to disclose NTN's and Brooklyn's financial projections.

22. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

### Financial Analyses

23. The S-4 fails to disclose material information regarding the analyses performed by Newbridge Securities Corporation ("Newbridge"), NTN's financial advisor.

24. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

25. The S-4 fails to disclose the following regarding Newbridge's Discounted Cash Flow Analysis:

    (i) Brooklyn's terminal values;

    (ii) The unlevered free cash flows used and the line items used to calculate unlevered free cash flows; and

    (iii) The basis for applying a perpetuity rate of 1.0%.

### Confidentiality Agreements

26. The S-4 fails to disclose whether the Company entered into any confidentiality agreements that contained standstill and/or don't ask, don't waive provisions.

27. Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

28. If disclosed, the omitted information would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim Against the Individual Defendants and NTN for Violation of Section 14(a) of the Exchange Act and Rule 14a-9**

29. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

30. The Individual Defendants disseminated the false and misleading S-4, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, failed to state material facts necessary to make the statements therein not materially false or misleading.

31. NTN is liable as the issuer of these statements.

32. The S-4 was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the S-4.

33. The Individual Defendants were at least negligent in filing the S-4 with these materially false and misleading statements.

34. The omissions and false and misleading statements in the S-4 are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Merger.

35. A reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the S-4 and in other information reasonably available to stockholders.

36. The S-4 is an essential link in causing plaintiff to approve the Proposed Merger.

37. Accordingly, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9.

38. Plaintiff is threatened with irreparable harm.

## COUNT II

**Claim Against the Individual Defendants, Merger Sub, and Brooklyn for Violation of Section 20(a) of the Exchange Act**

39. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

40. The Individual Defendants, Merger Sub, and Brooklyn acted as controlling persons of NTN within the meaning of Section 20(a) of the Exchange Act as alleged herein.

41. By virtue of their positions as officers and/or Board members of NTN and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the S-4, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

42. Each of the Individual Defendants, Brooklyn, and Merger Sub was provided with or had unlimited access to copies of the S-4 alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

43. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.

44. The S-4 contains the unanimous recommendation of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in the making of the S-4.

45. Merger Sub and Brooklyn also had supervisory control over the composition of the S-4 and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the S-4.

46. Accordingly, the Individual Defendants, Brooklyn, and Merger Sub violated Section 20(a) of the Exchange Act.

47. The Individual Defendants, Merger Sub, and Brooklyn had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.

48. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.

49. Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief against defendants as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them consummating the Proposed Merger;

B. In the event defendants consummate the Proposed Merger, rescinding it and setting it aside or awarding rescissory damages;

  C. Directing the Individual Defendants to disseminate an S-4 that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

  D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

  E. Awarding plaintiff the costs of this action, including reasonable allowance for attorneys' and experts' fees; and

  F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: January 30, 2021

**RIGRODSKY LAW, P.A.**

By: */s/ Gina M. Serra*
Seth D. Rigrodsky (#3147)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: sdr@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**GRABAR LAW OFFICE**
Joshua H. Grabar
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (267) 507-6085
Email: jgrabar@grabarlaw.com